\*McClung and Trevor *v.* James Means.    [196

.A letter to B., from M., giving general credit to P., does not charge M. for goods sold to P. by persons who never saw the letter, but had heard of its contents.

This cause came before the court upon a motion for a new trial, made in behalf of the plaintiffs, and was adjourned here for decision from Jefferson county. The case was this: The plaintiffs brought their action of assumpsit, and declared for goods sold and delivered as upon an original contract with the defendant. In support of their claim they gave in evidence the following letter, addressed by the defendant to Mr. James Boggs, of the house of Knox & Boggs, Philadelphia:

"Steubenville, *December* 26, 1825.

"Mr. James Boggs—*Sir:* All the goods C. O. Page may purchase in Philadelphia during the month of January, 1826, I hold myself accountable for the payment of the same.

"Respectfully yours,    James Means."

This letter was not delivered or intrusted to C. O. Page, but was forwarded to Mr. Boggs, and in the month of January, 1826, was shown by him to several merchants in Philadelphia, but was never shown by him to the plaintiffs. C. O. Page was the brother-in-law of Means, the defendant, and was known to be insolvent. The plaintiffs were informed by David King, who learned the fact from a brother of C. O. Page, that the defendant had written a letter of general credit to Boggs. They sold to Page merchandise to the amount of thirteen hundred and forty-five dollars and fifty-four cents in the month of January, 1826, and on the 20th of that month took his individual note for that sum, at ten months, with interest after four months. Page purchased goods of Knox & Boggs and others upon the credit of the letter, for which the defendant paid. The clerk of the plaintiffs testified that the goods were sold to Page, on the credit of the defendant's letter to Boggs, of which the plaintiffs had received information as stated. There was no proof in the case that the plaintiffs had ever given any direct notice to the defendant of a claim against

him for goods sold to Page. But there was proof that, in August, 1827, defendant conversed about the claim, and refused to pay it,. **197]** not on the *ground of want of notice, but on the ground; that his letter not having been shown to them, they could not, charge him with the goods. The court at the trial instructed the; jury that the plaintiffs could not recover unless, within a reasonable time after the sale, they had notified the defendant of the sale made to Page upon his account. Under this instruction, a verdict was returned for the defendant, and the plaintiffs moved. for a new trial on the grounds of misdirection by the court.

D. COLLIER, in support of the motion, insisted that the understanding being original in its character, notice was not necessary. He cited 2 Term, 80; 1 Salk. 27; 6 Mod. 248; Cowp. 229; Ld. Raym. 224; 17 Johns. 114; Fell on Guar. 20–40.

J. C. WRIGHT, on the same side.

TAPPAN, for defendant.

By the COURT:
One of the questions made on the trial was, whether the plaintiffs could recover without reasonable notice to the defendant. The view the court has taken of the case renders it unnecessary to. decide that question.

The principal question arises under the mercantile law, which; has its foundations in good faith. The first thing to be considered is the object of the letter, so far as it is explained by the contents, and other facts and circumstances proved in the case. The letter appears to furnish a credit, limited only by time. The liability to be incurred was an indefinite amount, without any specification of the time or mode of payment. These were left to the discretion of Page, or of Boggs, or of both of them. They could not have; been submitted to the dealer with Page. This would have been a, folly too great to impute to the writer of a letter of credit in his; sober senses. If the discretion was confided to Page, no good reason can be given why the letter was not delivered to him.. But as it was not, the fact itself furnishes a very strong argument **198]** that the writer did not intend to place such *unlimited confidence in him. The letter was addressed, not to the firm, but to;

one partner; and this, independent of the other circumstances, shows there was a trust and confidence of some kind reposed in Boggs, the individual to whom it was written. According to the reasoning of the plaintiffs, there was no other object in this than to give the contents publicity in the city. The answer is that Page could as well do this as Boggs. The motive of the writer was in some way to benefit Page through the instrumentality of Boggs. It might be, and it seems fair to presume it was, to introduce Page to men of integrity and fair dealing, and prevent his being overreached by every sharper that might by chance meet with him. The circumstances warrant the conclusion that Boggs had something to do with the extent of the credit, as well as the persons to whom Page should be introduced.

All these matters of discretion in Boggs seem justly inferable from the nature and circumstances of the case. It appears one of the partners (plaintiff) had indirectly got information of the contents of the letter; besides, rumor had probably spread them over the city, and had brought them to both partners. There would, however, be something assuming the appearance of a departure from strict fairness and propriety to permit a man, perhaps a young and inexperienced one too, to be sought out and made enter into extensive engagements, to charge a friend, without an introduction or exhibition of the letter upon which the writer was to be charged, to an unlimited amount. Such is not the ordinary course of fair-dealing merchants. In the absence of authority, the court would pause before they would give countenance to a transaction attended with such circumstances of unfairness. The case of Ayliff *v.* Mr. Justice Tracy, 2 P. Wms. 65, bears a strong analogy, in principle, to the one before the court. The plaintiff courted one of the daughters of Sir T. Hazlewood, and treated with the father about the marriage, who consented to it. He wrote his daughter, intimating that he had met the plaintiff, and had agreed to give him a portion, and subscribed his name to the letter. The father died before the marriage. *The daughter did not show the letter to the intended husband before the marriage.* The father had made his will before the *treaty [199 of marriage, and left his daughter a legacy of two thousand pounds, which the husband received. It was held this was no more than a communication, and not being shown to the husband before his marriage, he could not be supposed to have married in

183

consequence of it, etc. 4 Wheat. 89, note. The very fact that the plaintiffs did not call upon Boggs to see the letter or obtain a copy, although one of the partners had understood such a letter had been written, shows that they either intended to give credit to Page or that some apprehensions were entertained that Boggs would decline recommending their house to him. It would be fairer to presume the credit was given to Page himself than to Means, upon vague rumor. Indeed, the probability it was given to Page is a good deal fortified by the facts that his note was taken for the amount, and that no notice was given or demand made for payment of Means until some time afterward. If the credit was given to Means, why take the note of Page? The answer is a difficult one to make, consistent with the plaintiffs' present claims. It is not unfair to impute to the plaintiffs extreme negligence, if they originally intended to charge Means, or an intention to withdraw Page from the vigilance or experience, or both, of Boggs, who most certainly was intrusted with some agency and discretion by Means. The whole circumstance of the case warrants the latter conclusion. This stamps the transaction with a want of fairness, and forbids the court to aid the plaintiffs in reaping the fruits of their own imposition.

The circumstances of this case authorized the jury to find for the defendant, and judgment must be entered on the verdict.